**Ricky Austin LIVELY, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 04–95–00889–CR.

Court of Appeals of Texas, San Antonio.

Feb. 26, 1997.

Steven Allen Wadsworth, Brady, for appellant.

Ronald L. Sutton, District Attorney, Donnie J. Coleman, Assistant District Attorney, Junction, for appellee.

Before HARDBERGER and CHAPA, C.JJ.[1], LÓPEZ, J.

### Procedural Background

HARDBERGER, Chief Justice.

Our opinion and judgment of December 18, 1996 are withdrawn, and the following opinion and judgment are substituted. We substitute this opinion and judgment to reflect the county and trial court number of the original venue. This cause originated in Kimble County, Texas as cause number 735 in the 198th District Court. An agreed order transferring venue to McCulloch County, Texas was signed on July 17, 1995. The judgment and sentence were handed down in McCulloch County on September 20, 1995 in cause number 4313. The State then filed a motion for post-conviction change of venue pursuant to article 31.08 of the Texas Code of Criminal Procedure, which was granted on October 6, 1995. The case was returned to Kimble County, the county of original venue, on the same date.

### Introduction

Ricky Austin Lively ("Lively") was convicted of aggravated sexual assault of a child and indecency with a child. The jury assessed punishment at sixty-five years confinement for the sexual assault offense and twenty years confinement for the indecency offense, with the sentences to run concurrently. We affirm.

### Facts

The first disturbing incident made the basis of the prosecution in this case came to light when some children were jumping on a trampoline one weekend and one of the children, Cecily H_____, told another child, Mellonie L_____, that she was upset about something but could not talk about it because it was a secret. Cecily was Lively's niece, and was five years old at the time of this conversation. Mellonie was Lively's step-niece, and was twelve years old at the time.

Cecily's mother, Sissy, found out the next week about what Cecily told Mellonie and sat down for a talk with Cecily. During this conversation, Cecily told her mother that Lively made Cecily and Lively's son, J.T., also five years old at the time, take off their clothes and have sex with each other. Cecily said that Lively took them in a room and showed them how to have sex. According to Cecily, Lively told her to put her hand on J.T.'s penis and rub it until it got hard. He then told J.T. to put his finger in Cecily's vagina before inserting his penis. Sissy testified as the outcry witness for her daughter and used the terms "penis" and "vagina." Cecily had used the term "tater bug" when referring to her vagina and "wienie" when referring to a penis. Cecily told her mother that she came out of the room and told Lively that she did not want to do what he told them to do, but he told her to go back in the room and do it. She did. Sissy cried and spanked Cecily after Cecily told her the whole story.

Later that same evening, Sissy told her former sister-in-law, Maggie Graham, what had happened. The next day, Sissy and Maggie gave their written statements to law enforcement officers and Child Protective Services worker Judy Brown. Judy Brown later took statements from two of the children on the trampoline on the weekend in question, but could not get a complete statement from Cecily, who feared another spanking if she discussed what had happened.

Judy Brown subsequently questioned Lively's son, J.T., about the incident. This conversation was videotaped and the videotape was introduced at trial as one of the State's exhibits. During his interview with Judy Brown, J.T. indicated that his father had showed Cecily how to touch J.T. to arouse him and then told J.T. to put his penis in Cecily's vagina when Cecily got on top of him. J.T. explained that his father was in the living room when Cecily and J.T. were in the bedroom, but that he came in and talked to them at some point.

Lively denied that he induced Cecily and J.T. to have sex with each other.

1. Alfonso Chapa (retired) not participating

The indecency-with-a-child-by-contact charge in this case arose out of Lively's conduct with his step-niece, Mellonie L_____. Mellonie claimed that Lively made her lay on the bed and touch his private parts while they watched videos together.

## Sufficiency of the Evidence

In his first two points of error, Lively claims that the evidence is legally and factually insufficient to support the jury's verdict of guilty on the count of aggravated sexual assault of a child. We review these sufficiency challenges under the following standards.

■ In reviewing the legal sufficiency of the evidence, this court must determine whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Little v. State*, 758 S.W.2d 551, 562 (Tex.Crim.App.) (quoting *Alexander v. State*, 740 S.W.2d 749, 757–58 (Tex.Crim.App. 1987)), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988). We note that jurors are empowered "to draw reasonable inferences from basic facts to ultimate facts." *Kapuscinski v. State*, 878 S.W.2d 248, 249 (Tex.App.—San Antonio 1994, pet. ref'd). The jury, as the trier of fact, assesses the credibility of witnesses and the weight to be given their testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). The jury has sole discretion to accept or reject all or part of any witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex.Crim.App.1981). Accordingly, the evidence is not rendered insufficient merely because the appellant presented a different version of the events. *Little*, 758 S.W.2d at 552–53 (quoting *Anderson v. State*, 701 S.W.2d 868, 872–73 (Tex.Crim.App.1985), *cert. denied*, 479 U.S. 870, 107 S.Ct. 239, 93 L.Ed.2d 163 (1986)). The standard of review for this court in deciding a challenge to the factual sufficiency of evidence is whether, after looking at all the evidence, the verdict is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust."

*Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim.App.1996).

In this case, Lively was not charged with sexually assaulting Cecily himself; rather, he was charged and convicted under the law of parties. The indictment charged that Lively, acting with the intent to aid in the commission of the offense, intentionally and knowingly aided and encouraged his son, J.T., in the commission of the offense. The jury was instructed that they should find Lively guilty of aggravated sexual assault of a child only if they found that J.T. sexually assaulted Cecily and that Lively intentionally and knowingly aided and encouraged the commission of the offense.

■ Section 7.02(a)(2) of the penal code sets forth the law of parties and provides that "[a] person is criminally responsible for an offense committed by the conduct of another if: ... (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other to commit the offense." TEX.PENAL CODE ANN. § 7.02(a)(2) (Vernon 1989). It is also no defense "that the person for whose conduct the actor is criminally responsible ... is immune from prosecution." *Id.* § 7.03(2). In considering whether the accused participated as a party, the court may look to events that occurred before, during, and after the offense was committed. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App.1985), *cert. denied*, 476 U.S. 1101, 106 S.Ct. 1942, 90 L.Ed.2d 352 (1986). "Evidence is sufficient to support a conviction under the law of parties where the actor is physically present at the commission of the offense, and encourages the commission of the offense either by words or other agreement." *Burdine v. State*, 719 S.W.2d 309, 315 (Tex.Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Cordova*, 698 S.W.2d at 111.

■ Lively claims in his first point of error that the evidence is legally insufficient to support his conviction under the law of parties because the witnesses contradicted themselves about the location and degree of assistance of Lively during commission of the crime. Lively testified that he had no knowledge or intent regarding commission of the

offense. The relevant witnesses testified as follows. Sissy, Cecily's mother, testified on direct examination that her daughter told her Lively took the two children into a room, made them take off their clothes, and showed them how to have sex. Sissy said Cecily told her that Lively instructed Cecily to put her hand on J.T.'s penis and rub it until it got hard, and then told J.T. to put his finger in Cecily's vagina before inserting his penis and moving in and out. On cross-examination, the defense questioned Sissy about an earlier statement she made in which she said that Cecily told her that she and J.T. went into the bedroom and J.T. told her to take off her clothes and touch him on his private parts. Sissy gave this statement to the authorities shortly after the incident in question and admitted making the statement.

J.T. testified in his videotaped interview with Child Protective Services worker Judy Brown in pertinent part as follows:

Q. I was talking to Cecily and she told me about one time when you and her took off your clothes and played together. Now, you're not in trouble and that's not why you're here. I was just wondering about it.

A. My dad said it was okay. She didn't have to tell.

Q. Are you upset with her because she told?

A. Nods yes.

. . . .

Q. How did you know what to do? Did he tell you what to do?

A. My dad taught me and Cecily.

. . . .

Q. What did Cecily have to do to your dick?

A. Play with it.

Q. And what does she play with it with? With her nose? Her mouth? Her tummy? Her hand?

A. Nods yes on "hand."

Q. Does she touch it?

A. Nods yes (indicating stroking motion).

Q. What do you call this? Stroking, touching it or feeling?

A. Feeling it.

Q. Does it get smaller? Does it shrink? Or does it stand out?

A. It grows longer (demonstrating with hand).

Q. Did your dad tell Cecily what to do? Did your dad say, "Cecily, touch this—touch the dick?"

A. Nods yes.

. . . .

Q. Did your dad stay with you the whole time?

A. He stayed in the living room.

Q. But he told ya'll what to do?

A. Nods yes.

Q. When did he leave? Did he leave after you put your dick in her pussy, or before?

A. He told us how to do it.

. . . .

Q. Where was your dad while you were laying on the bed naked? . . .

A. He was in the living room.

Q. Would he come into the room where you were laying on the bed? How did he show you what to do?

A. He went into the living room, then he just came in and talked to us.

Q. Was he standing at the door or did he come all the way into the room?

A. He came all the way in the room and told us.

. . . .

Q. How did ya'll start talking about sex? Did your dad start talking about sex? Did your dad start talking about it, or did you talk about it?

A. My dad.

. . . .

Q. Who told you you had to take off your clothes?

A. My dad did.

. . . .

Q. Have you told your mom about this sex business?

A. My dad said to keep it a secret.

Lively denied any knowledge or intent regarding the commission of the offense. He testified that he picked Cecily and J.T. up

from school that day and brought them back to his house. He said he then stayed in the living room while the children went into the bedroom to watch videos. When he finally went into the bedroom, he found the children under the covers on top of each other and he told them that what they were doing was wrong. He threatened to tell the children's mothers, but when they started to cry, he told them it would be their little secret. Lively claimed that he was merely guilty of using the wrong words.

Viewing the evidence in this case in the light most favorable to the jury's verdict of guilty, we conclude that a rational trier of fact could have found that Lively intentionally and knowingly aided and encouraged his son in the commission of the offense of aggravated sexual assault of a child. We are not convinced by Lively's arguments that discrepancies in the witnesses' testimony render the evidence legally insufficient to support Lively's conviction. Reconciliation of conflicts in the evidence lies within the exclusive province of the jury. *Losada v. State*, 721 S.W.2d 305, 309 (Tex.Crim.App.1986). Lively's first point of error is overruled.

Lively contends in his second point of error that the great weight of the evidence supports a finding that he was not in the room and did not know of the commission of the offense. In support of this contention, Lively incorporates his arguments referenced above with regard to the legal insufficiency of the evidence, and further asserts that the evidence showed the children had exchanged inappropriate sexual behavior prior to the time the alleged crime occurred. The evidence of the children's previous sexual behavior consisted of the testimony of Gisselle Lively, appellant's wife. Gisselle testified that she caught the children acting inappropriately on two separate occasions. The first time, she walked into the bathroom at her house and caught Cecily and J.T. with their pants down. The second time, she walked into a back room at her sister's house where the children were playing and found J.T. with his pants unbuttoned. The State claims that any notion of the children simply experimenting with each other in innocent play when the crime occurred is negated by J.T.'s vivid

testimony regarding his father's step-by-step instructions of how to have sex. We agree. After reviewing all of the evidence in this case, we cannot conclude that the jury's verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We find that the evidence is factually sufficient to support the jury's verdict. Lively's second point of error is overruled.

### Evidence of Videotape of Defendant and His Wife

▇ In his third point of error, Lively claims that the trial court erred by allowing evidence regarding the prior existence of a videotape of Lively and his wife engaging in sexual acts. The evidence established that Lively showed the videotape in question to Mellonie L_____, his step-niece, while she was staying at Lively's house. Mellonie testified that when she was about six years old, she and Lively would lie on the bed at his house and watch videos, one of which showed Lively and his wife, Gisselle, having sex with each other. Mellonie also said that Lively would make her touch his penis and move her hand while they watched the videos. The video of Lively and his wife was not available at trial because Lively's wife recorded over the sex scenes some time earlier when she was taping cartoons for J.T.

The trial judge admitted the testimony regarding the videotape over Lively's objection that it constituted extraneous conduct, was irrelevant, and its prejudicial effect substantially outweighed its probative value. Lively complains on appeal only that the prejudicial effect of the video evidence outweighed its probative value. The trial judge conducted a balancing test under Texas Rule of Criminal Evidence 403 and specifically found that the probative value of the evidence regarding the video was not substantially outweighed by its prejudicial effect. The judge based this decision on the fact that the video was an instrument used by Lively to induce Mellonie to engage in sexual activity and was relevant to the indecency-with-a-child-by-contact charge.

Trial courts should be allowed considerable discretion to exclude or admit evidence be-

fore the jury and an appellate court should not set aside the trial court's rulings absent a showing on the record that the trial court has abused that discretion. *Montgomery v. State,* 810 S.W.2d 372, 379 (Tex.Crim.App. 1990). Appellate courts should give deference to the rulings of the trial court if the trial court follows the correct analysis, balances the appropriate factors, and does not act in an arbitrary or capricious fashion. *Id.* at 391–92.

The trial judge in this case correctly analyzed the testimony regarding the videotape under Texas Rule of Criminal Evidence 403. After balancing the appropriate factors, the judge concluded that Rule 403 did not preclude admission of the evidence regarding the videotape. We hold that the trial judge did not abuse his discretion in admitting this evidence. Lively's third point of error is overruled.

### Confrontation Clause Challenge

■ In his fourth point of error, Lively claims that the trial court erred in admitting the videotaped statement of his son, J.T., because (1) admission of the taped testimony violated his constitutional rights to confrontation and cross-examination of witnesses; and (2) a proper predicate had not been laid under article 38.071 of the Texas Code of Criminal Procedure. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal procedures, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. However, the United States Supreme Court has stated that an exception to the right of face-to-face confrontation exists when the State shows that a special procedure is necessary to protect child witnesses from the trauma of testifying in court. *Maryland v. Craig,* 497 U.S. 836, 855, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666, 685 (1990). The Court decided that the use of a one-way, closed-circuit television is constitutional under such an exception. *Id.* at 857, 110 S.Ct. at 3170, 111 L.Ed.2d at 686.

Even before the Supreme Court's decision in *Craig,* the Texas Legislature specifically provided for alternative forms of testimony for child victims of sexual abuse. *See* TEX.

CODE CRIM.PROC.ANN. art. 38.071 (Vernon 1981). Article 38.071 § 2(a) provides:

The recording of an oral statement of the child made before the indictment is returned or the complaint has been filed is admissible into evidence if the court makes a determination that the factual issues of identity or actual occurrence were fully and fairly inquired into in a detached manner by a neutral individual experienced in child abuse cases that seeks to find the truth of the matter.

*Id.* art. 38.071 § 2(a). The Texas Court of Criminal Appeals has also recognized that public policy considerations support the use of alternative forms of testimony for child witnesses. In *Hightower v. State,* 822 S.W.2d 48, 53 (Tex.Crim.App.1991), the court noted a legislative concern for protecting children from the turmoil associated with having to give testimony in a courtroom.

■ Both the United States Supreme Court and the Texas Court of Criminal Appeals have held that the determination of whether such alternative forms of testimony are necessary should be made on a case-by-case basis. *Craig,* 497 U.S. at 855, 110 S.Ct. at 3169, 111 L.Ed.2d at 685; *Hightower,* 822 S.W.2d at 51. In making such a determination, courts should consider whether: (1) use of a video is necessary to protect the welfare of the child; (2) the trauma to the child comes from exposure to the abuser, rather than from the courtroom generally; and (3) the emotional distress to the child would be more than de minimus. *Craig,* 497 U.S. at 855–56, 110 S.Ct. at 3169, 111 L.Ed.2d at 685. In this case, the court heard testimony from Judy Brown that after J.T. had been in the courtroom for a few minutes during voir dire and had seen Lively, he withdrew and changed his behavior. Brown testified that J.T.'s therapist advised her that it would not be in the child's best interest to testify in court because it could cause him to regress in his therapy. Brown also stated that she felt that there was a risk to J.T. if he were to testify in court. Based on this testimony, the trial judge found that J.T. was not available to testify due to potential psychological harm to the child and allowed the videotaped testimony.

The trial court did not make specific findings on each of the three criteria referenced above, but the State argues that those findings are implicit in the court's determination that the child was not available to testify due to potential psychological harm to the child. We agree. The trial judge considered and heard testimony on each of the three *Craig* factors. Brown's testimony established that use of the video was necessary to protect J.T. because J.T. would suffer harm not from being required to testify in the courtroom, but from exposure to Lively. Further, Brown's opinion on the risk associated with J.T. testifying in court, combined with the therapist's opinion that J.T. might regress in his therapy, established that the emotional distress to J.T. would be more than de minimus.

Notwithstanding any lack of specific findings by the trial court, Lively contends that the provisions of article 38.071 do not apply to this case because J.T. was not the alleged victim of the offense. It is true that article 38.071 applies only to victims, as evidenced by its title: "Testimony of Child Who is Victim of Offense." However, the court of criminal appeals has condoned the use of alternative forms of testimony for child witnesses who are not victims of the charged offense. *Gonzales v. State,* 818 S.W.2d 756, 764–66 (Tex.Crim.App.1991), *cert. denied,* 507 U.S. 939, 113 S.Ct. 1334, 122 L.Ed.2d 718 (1993). The child in *Gonzales* was the sister of the victim of the offense then being tried, and was also the victim in a sexual assault case then pending against the appellant in another court. *Id.* at 757, 765. The court decided that whether the Texas Legislature intended to extend article 38.071 to such a situation is irrelevant because the bottom line is whether the defendant's right to confrontation has been violated. *Id.* at 765. In reaching this decision, the court had little trouble finding public policy interests beyond those addressed by the statutory language in article 38.071. *Id.* at 765. In fact, the court expressly concluded that it should not be limited to acts or statutes in discerning public policy considerations. *Id.*

Public policy considerations support the trial court's decision to allow the child in this case, J.T., to testify by video. Although J.T. was not the purported victim of the offense with which Lively was charged, he, like the child in *Gonzales,* was still a victim. There were truly two victims in this case—Cecily and J.T. As the court of criminal appeals noted in *Gonzales,* while article 38.071 may not specifically cover children who are not victims of the offense charged, the Texas Legislature has expressed a legislative concern to protect children under similar circumstances. *Id.* at 765 & n. 16. The court found this legislative concern to be a policy consideration supporting the trial court's actions. *Id.* This policy consideration also supports the trial court's actions in this case in allowing J.T., a child in circumstances similar to those of the alleged victim, Cecily, to testify by video.

We find that the trial court's admission of the videotaped testimony of J.T. did not abrogate Lively's constitutional rights to confrontation and cross-examination of witnesses. Lively's fourth point of error is overruled.

### Hearsay

■ Lively asserts in his fifth and final point of error that the trial court erred by overruling his hearsay objection to the testimony of Pat Kidd regarding Lively's statements about why his bond was revoked. During the punishment phase of the trial, Kidd, the director of the Adult Probation Office for Kimble and McCulloch counties, was questioned about why Lively's bond was revoked. The trial court allowed Kidd to testify, over Lively's objection, that Lively's bond was revoked because he made comments about taking his child. Kidd admitted that he did not hear Lively make those comments—someone merely told Kidd about Lively's comments. Lively claims that Kidd's statements constituted hearsay within hearsay, and should have been excluded under Texas Rule of Criminal Evidence 802. The State relies on Rule 801 and asserts that Kidd's statements were not hearsay because they were not offered to prove the truth of the matter asserted—the State did not seek to prove that Lively was going to take his child. Texas Rule of Criminal Evidence

801(d) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R.CRIM.EVID. 801(d). The trial judge could have logically concluded that Kidd's testimony was not hearsay because it was not offered to prove that Lively intended to take his child. The trial court did not abuse its discretion in allowing this evidence. Lively's fifth point of error is overruled.

The judgment of the trial court is affirmed.