**Ricky Austin LIVELY, Appellant,**

v.

**The STATE of Texas.**

Court of Criminal Appeals of Texas, En Banc.

May 20, 1998.

Steven A Wadsworth, Brady, for appellant.

Donnie J. Coleman, Asst. Dist. Atty., Junction, Matthew Paul, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD Judge, delivered the opinion of the Court, in which McCORMICK, Presiding Judge, and KELLER, PRICE, HOLLAND and WOMACK, Judges, joined.

We granted appellant's petition for discretionary review to determine whether the Fourth Court of Appeals had erred in holding that the trial court had not violated appellant's Sixth Amendment right to confrontation.[1] We hold now that the Fourth Court of Appeals did not err.

### The Relevant Facts

In May 1995 the Kimble County Grand Jury indicted appellant for the felony offenses of indecency with a child and aggravated sexual assault of a child. See Tex. Penal Code §§ 21.11(a)(1) and 22.021(a)(1)(B)(i) & (2)(B). In July 1995, at the request of the parties, venue was trans-

ferred to McCulloch County, and in September 1995 the case went to trial in the 198th District Court of McCulloch County. Shortly before the trial on the merits began, the State notified the trial court and appellant that it intended to offer in evidence, under Article 38.071, § 5, of the Texas Code of Criminal Procedure, a videotaped interview of one of appellant's victims, his five-year-old son, J.T.L. The trial court immediately held an evidentiary hearing on the matter, at which hearing one witness, Judy Brown, testified. Her testimony was, in relevant part, as follows:

Q: Okay. Well, you are the Child Protective Services worker that's involved in this case?

A: Yes, I am.

Q: You've been involved in Child Protective Services for over ten years?

A: Yes, I have.

Q: After the [earlier] hearing in this case and after the child J.T.[L.] has been in the courtroom and seen his father, there were some changes in this child's behavior, some withdraw—withdrawing and things of that sort, and did you and I place a call last night to the therapist John Wilder?

A: Yes, we did.

Q: And did Mr. Wilder advise us that he felt it would be against the best interest of this child to testify in this court proceeding?

A: Yes, he did.

Q: Did he indicate he felt it would cause the child to regress in his therapy?

A: Yes, he did.

Q: Now, you have been with the child on a couple of occasions when [sic] the supervised visitations with his father?

A: Yes.

Q: And it would be correct to say that following those visitations with the child—I mean with his father, that the child would regress and go back into himself at that point?

---

1. The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." This right to confrontation was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403–05, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

A: Yes, he would.

Q: And would it be fair to say that the child in talking with you and in going back and forth after those had indicated to you feelings of guilt about having told about things that his father said not to tell?

A: Yes, he did.

Q: And part of your work in Child Protective Services is in the work of risk assessment, is it not?

A: Yes.

Q: As a matter of fact, you train the risk assessment people all around the state?

A: Yes, I did.

Q: And as part of your risk assessment, did you have—you made a determination as to whether or not you feel that there is a risk to the child J.T.[L.] if he is required to testify—

A: Yes.

Q: —in court?

A: Yes, there is a risk.

\* \* \*

Q: And based on your experience and training, are you an expert in the field of handling, treatment, and investigation of child abuse cases?

A: Yes, I am.

After Brown completed her testimony, defense counsel stated for the record, "I've had a copy of the [video]tape in my possession [for more than 60 days] and had ample opportunity to view it and ask cross-examination questions, and I declined." (Defense counsel was apparently referring to his right, under Article 38.071, § 5(b), to cross-examine J.T.L. on videotape outside the presence of the defendant.) The trial court then found, as a matter of fact, that "the child is not available to testify due to potential psychological harm to the child." The trial court also stated for the record that it had "reviewed the videotape and [had] determined the child underst[ood] the difference between truth and fals[ity] and [was] able to understand the questions and communicate with Ms. Brown." Defense counsel then objected

to the admission of the videotape on the grounds that (1) "the proper predicate ha[d] not been laid under Article 38.071(b) [sic]" and (2) J.T.L. was incompetent to testify. The trial court overruled both objections.

During the State's case-in-chief, the prosecutor formally offered the videotape in evidence, and the trial court admitted it over the following objection from defense counsel:

At this time, Your Honor, the defendant would object on the grounds [the] proper predicate hasn't been laid for admission of this tape. This violates the defendant's constitutional rights to the confrontation and cross-examination of witnesses. Violates cross-examination and confrontation of witnesses. Not sufficient reliability or trustworthiness of what has been said, and it [violates his] federal [and] state due process rights. We would also object on the grounds it is hearsay, and also object on the grounds that this is not the first person that he related this event to.

The jury then viewed the videotape and, later, found appellant guilty of indecency with a child and aggravated sexual assault of a child, as charged in the indictment. The jury assessed appellant's punishment at imprisonment for 20 years for the indecency offense and imprisonment for 65 years for the assault offense.

On direct appeal, appellant refined and, to a considerable extent, altered his argument concerning the admissibility of the videotape. Appellant refined his constitutional argument and claimed that his "federal and state due process and confrontation clause rights [had been] violated" by the admission of the videotape because the trial court had failed to "conduct any form of *Craig* analysis." See *Maryland v. Craig,* 497 U.S. 836, 855–57, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666 (1990), and discussion, *infra.* Appellant also argued, for the first time,[2] that the videotape was inadmissible under Article 38.071 because, under the indictment, J.T.L. "was not the alleged victim in this case, but rather the principal actor."[3]

2. But see Tex.R.App. Proc. 33.1(a)(1).

3. With respect to the aggravated sexual assault charge, the indictment alleged that appellant was

The Fourth Court of Appeals considered and rejected both of appellant's arguments and affirmed the trial court's judgment. *Lively v. State,* 940 S.W.2d 380 (Tex.App.— San Antonio 1997). With respect to appellant's constitutional argument, the Court of Appeals reasoned that although "[t]he trial court did not make specific findings on each of the three criteria referenced [in *Maryland v. Craig* ],[4] ... those findings [were] implicit in the court's determination that the child was not available to testify due to potential psychological harm to the child." *Id.* at 387 (footnote added). With respect to appellant's statutory argument, the Court of Appeals reasoned that "[p]ublic policy considerations support[ed] the trial court's decision to allow [J.T.L.] to testify by video." *Ibid.* We subsequently granted appellant's petition for discretionary review to consider his Sixth Amendment claim under *Maryland v. Craig.* See Tex.R.App. Proc. 66.3(b). We did not grant appellant's petition to consider his statutory claim under Article 38.071.

In his brief to this Court, appellant argues, in relevant part,[5] that the admission of the videotape violated his Sixth Amendment right to confrontation because "the trial court did not make the specific findings required by *Craig.*" Appellant argues further that "*Craig* did not speak in terms of implied findings but rather set forth specific prongs of its test. Thus, [*Craig* ] has not been followed in this case."

### Analysis

"The central concern of the Confrontation Clause [of the Sixth Amendment] is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. at 844–46, 110 S.Ct. at 3163. The Confrontation Clause reflects a preference for face-to-face confrontation at trial, but that preference must occasionally give way to considerations of public policy and the necessities of the case. *Id.* at 848–49, 110 S.Ct. at 3165. Still, a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial *only* when denial of such confrontation is necessary to further an important public policy and the reliability of the testimony is otherwise assured. *Id.* at 849–51, 110 S.Ct. at 3166. In particular, "if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id.* at 855, 110 S.Ct. at 3169. The requisite *necessity* to justify the use of such a special procedure in a child abuse case may be shown if the trial court determines that (1) the use of the procedure is necessary to protect the welfare of the particular child witness who seeks to testify; (2) the child witness would be traumatized by the presence of the defendant; and (3) the trauma would be more than *de minimis, i.e.,* more than mere nervousness or excitement or some reluctance to testify. *Ibid.* See *Hightower v. State,* 822 S.W.2d 48, 51 (Tex.Crim. App.1991); *Gonzales v. State,* 818 S.W.2d 756, 760–762 (Tex.Crim.App.1991). The requisite *reliability* of the child witness' testimony may be assured absent a face-to-face encounter through the combined effect of the witness' testimony under oath (or other admonishment, appropriate to the child's age and maturity, to testify truthfully), subject to cross-examination, and the factfinder's ability to observe the witness' demeanor, even if

---

criminally liable *as a party* to an aggravated sexual assault committed by five-year-old J.T.L. against five-year-old C.H.

**4.** See discussion concerning *Maryland v. Craig, infra.*

**5.** Appellant also argues in his brief that the admission of the videotape contravened the decision in *Bruton v. United States,* 391 U.S. 123, 88

S.Ct. 1620, 20 L.Ed.2d 476 (1968), in which the Supreme Court held that the Sixth Amendment's Confrontation Clause forbids the use, at a joint trial, of a non-testifying co-defendant's confession that implicates another defendant by name. Appellant did not make this *Bruton* argument in the Court of Appeals, however, so we do not address it. See *Owens v. State,* 827 S.W.2d 911, 917 n. 7 (Tex.Crim.App.1992).

only on a video monitor. *Maryland v. Craig,* at 857–59, 110 S.Ct. at 3170.

■ Appellant complains that the necessity for using a special procedure for J.T.L.'s testimony at his trial was not shown because the trial court did not *explicitly* make the three findings spelled out in *Maryland v. Craig.* We are unpersuaded by appellant's argument. Nothing in *Maryland v. Craig* requires that a trial court make explicit, as opposed to implicit, findings regarding the necessity of a special procedure to protect a child witness in a child abuse case. Furthermore, in the instant case, the three findings required by *Maryland v. Craig* were fairly implicit in the trial court's explicit finding that J.T.L. was unavailable to testify "due to potential psychological harm" to him. The trial court heard substantial and uncontroverted testimony from an expert witness to the effect that J.T.L. "regressed" and "withdrew" "back into himself" when in appellant's presence, and that requiring J.T.L. to testify in the courtroom posed a "risk" to him and would cause him to "regress in his therapy." Under these particular circumstances, we conclude, as did the Court of Appeals, that the three findings required by *Maryland v. Craig* were implicit in the trial court's single explicit finding. That is, it was implicit in the trial court's explicit finding that the special procedure was necessary to prevent substantial harm to J.T.L. caused by appellant's presence in the courtroom.

We overrule appellant's ground for review and affirm the judgment of the Court of Appeals.

MEYERS, J., delivered a dissenting opinion, in which BAIRD and OVERSTREET, JJ., joined.

MEYERS, Judge, dissenting.

The majority answers the simplest question presented in this case by saying nothing different or more insightful than was said by the Court of Appeals.[1] A more interesting and difficult question might have been presented, but is dependent upon the unusual facts in this case and unreachable due to procedural default. Even the question addressed by the majority is not clearly briefed and presented and thus should not have been entertained by this Court.[2] At any rate, the majority does not resolve the issue in a legally meaningful manner, relying largely on the facts of this particular case rather than providing analysis of pertinent legal principles. This case ought to be held as improvidently granted.

BAIRD and OVERSTREET, JJ., join.

---

1. The tougher question that might have been presented is whether Code of Criminal Procedure article 38.071 and *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), apply to a child witness who is an alleged co-defendant and principal actor. This issue is probably procedurally defaulted because it was not clearly articulated and argued in the Court of Appeals, and, even assuming it was adequately presented to that court, appellant does not complain before this Court of the Court of Appeals' failure to address it. The simpler question presented and addressed by the Court is whether *Craig* requires the trial court to make explicit findings.

2. Before the Court of Appeals and before this Court in his petition for discretionary review, appellant argued the trial court should have made explicit findings under *Craig.* In his brief on his petition for discretionary review appellant argued for the first time that *Craig* does not apply at all.