# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00488-CR

**Herman McMillin, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. 9-03-4140, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following trial, a jury found appellant, Herman McMillin, guilty of committing aggravated sexual assault against a child, indecency with a child by contact, and indecency with a child by exposure. The trial court assessed punishment on the respective counts at forty, twenty, and ten years' imprisonment. In three points of error, appellant asserts that his conviction should be reversed because the trial court abused its discretion by denying his challenge for cause to a prospective juror, denying the admission of videotaped testimony to impeach the complainant, allowing the State's expert to testify in the form of hypothetical questions that were closely tied to the facts of the case, and by denying his motion for mistrial. For the reasons below, we affirm the conviction.

**BACKGROUND**

The victim and complainant in this case, R.L., was the appellant's granddaughter, and was eleven years old at the time of trial. She claimed that appellant sexually abused her when she was in second or third grade, on a day that her grandmother and older sister left her home alone with her grandfather. R.L. first revealed this to her mother, who notified the proper authorities. Appellant voluntarily went to the police station for questioning and then signed a statement admitting that the accusations were true. He later denied the accuracy of that statement and pled not guilty. A trial ensued and he was convicted on all three counts. The facts relevant to each of the errors claimed by appellant are set forth below.

**ANALYSIS**

**Challenge for Cause**

During voir dire, defense counsel asked the entire panel whether any of them felt like they could not be fair to appellant, based on general feelings about or experiences with child molesters. Potential juror Foley raised her hand and agreed that she could not be fair and impartial, because she "work[ed] with physically and mentally challenged high school kids," so she "tend[ed] to want to overprotect." Foley was one of sixteen potential jurors who indicated that they would have difficulty being fair and impartial to appellant. After the parties agreed to dismiss four of these potential jurors, the other twelve, including Foley, were individually called to the bench for further questioning. During Foley's individual voir dire, the following colloquy took place:

> Court:     I think in response to a general question you said, for some reason, you didn't think you could be fair to Mr. McMillin?

Foley:      Uh-huh.

Court:      Do you know something about him or about—

Foley:      I work with special needs kids.

Court:      . . .[I]f there's some special reason why it would make you not a fair juror, I'm here listening. But, I mean, we are all concerned you know. We've got to put twelve people in that box. My guess is every one of them is concerned about a crime in Travis County. Every one of them is concerned about children. . . . All we are asking is, could you give this man a fair trial? Some people can't from their experiences—

Foley:      I just don't know until I hear the facts.

Court:      . . . [W]hat we need is somebody willing to render a true verdict and let the chips fall where they may. If the State doesn't prove every element beyond a reasonable doubt, then our law . . . [is] that person is not guilty for purposes of this offense. And if you find beyond a reasonable doubt that the State has proved it, then you return a verdict of guilty. . . . What you're up here for is for me to determine whether you have some of those special difficulties that would render you not a good juror in this case. . . . [Sexual abuse of a child] is nothing we want to talk about in open court, but the fact that it's uncomfortable or difficult doesn't keep you from being a fair and impartial juror. Only you know whether you can be and that's what we're trying to find out.

Foley:      I have to hear the facts.

Court:      . . . In order to know whether or not you could be fair?

Foley:      Well, that's what I want to be.

Court:      You can't render a decision until you hear all the evidence, but what I am asking . . . [is] if you took that oath [to render a true verdict after you hear all the evidence], could you follow it? And that's what this defendant needs to know. That's why—

Foley:      I'd do the best of my ability. . . . I believe I can be fair.

Court:      . . . I don't want to tell you what to do. . . .

| | |
|---|---|
| Foley: | Yes, I could be fair. |
| Appellant's Counsel: | So Ms. Foley, if you are on this jury, can you set aside whatever emotions or feelings you had and listen to the evidence and you can be an objective [juror] . . . without having prejudice towards the defendant when hearing that evidence; is that correct? |
| Foley: | Yes. |
| Appellant's Counsel: | Okay. So you've changed your mind. . . . ? |
| Foley: | Yes, I could be fair. |
| Appellant's Counsel: | Okay, you believe you can be a fair and impartial juror? |
| Foley: | Yes. |

Based on this, the trial court denied appellant's challenge for cause to Foley.[1] Appellant then used one of his ten peremptory strikes to eliminate Foley from the panel. Appellant now urges that it was reversible error for the court to deny his challenge for cause to potential juror Foley. Specifically, appellant claims that the court abused its discretion by questioning Foley further, after she initially stated that it would be difficult for her to be fair and impartial towards an alleged child molester.

"We review a trial court's ruling on a challenge for cause with considerable deference" and will reverse the ruling "only if a clear abuse of discretion is evident." *Blue v. State*, 125 S.W.3d 491, 497 (Tex. Crim. App. 2003). This is especially true when the record reflects that a potential juror was vacillating or equivocating, because the trial judge was in the best position to

---

[1] Appellant also challenged the eleven other potential jurors who were individually questioned at the bench. The trial court granted nine of these challenges and denied the other two.

observe the person's demeanor and tone of voice—important factors which "do not come through when reviewing a cold record." *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994); *see also Brown v. State*, 913 S.W.2d 577, 580-81 (Tex. Crim. App. 1996) (holding that, if potential juror was vacillating, "the reviewing court is bound by the trial court's judgment in the matter").

Article 35.16(a) of the Texas Code of Criminal Procedure sets forth the grounds upon which a potential juror may be challenged for cause. Tex. Code Crim. Proc. Ann. art. 35.16(a) (West 1989). Article 35.16(a)(10) states that a juror who has formed a conclusion of guilt or innocence, prior to hearing the evidence, should be dismissed under certain conditions. *Id*. The trial court has sole discretion to grant or deny the challenge, and the provision encourages further questioning of potential jurors who initially express biased attitudes. *Id*.

In three recent decisions, the Texas Court of Criminal Appeals directly addressed the issue of whether it is appropriate to further question a potential juror who has been challenged for cause pursuant to article 35.16(a)(10). *Threadgill v. State*, 146 S.W.3d 654, 667 (Tex. Crim. App. 2004); *Newbury v. State*, 135 S.W.3d 22, 30 (Tex. Crim. App. 2004); *Cannady v. State*, 11 S.W.3d 205, 209 (Tex. Crim. App. 2004). All of these cases involved potential jurors who, in response to general questions about their attitudes, initially stated biased opinions against the defendants, but who, upon further questioning and explanation of the proper legal standards, affirmed that they could serve as fair and impartial jurors. In each of these cases, the court found that it was not an abuse of discretion to deny the challenge for cause.

The court has consistently held that it does not violate the procedures set out in article 35.16(a)(10) for a trial judge or for counsel to "accurately explain[] the law" to a vacillating venireman during an "individual voir dire." *See*, *e.g.*, *Newbury*, 135 S.W.3d at 30. Most recently,

5

the court stated that a prospective juror cannot be excused for cause until the law is explained to him and he is asked whether he can follow that law regardless of his personal views. *Threadgill*, 146 S.W.3d at 667. In *Newbury*, the court clarified the meaning of the language in article 35.16(a)(10) that states if the potential juror "answers in the affirmative" that he has a conclusion so established in his mind that it will influence his verdict, then "he shall be discharged without further interrogation by either party or the court." 135 S.W.3d at 30. The court held that this language did not prevent the trial court or counsel from accurately explaining the law to potential jurors, but that it was only "meant to prevent rehabilitation of a potential jury member who has clearly shown himself to be impartial, given an accurate understanding of the law and his obligations under it." *Id*.

The trial court here followed the directives of the court of criminal appeals. At trial, appellant objected that it was not appropriate to conduct further questioning of those potential jurors who initially expressed bias, and that they should be automatically dismissed for cause based on their initial statements. In response, the judge explained that potential jurors who simply made "general responses to general questions" should not be automatically dismissed without first "clearly establishing what the law requires" of them. The judge went on to explain that:

> [A] lot of people are looking at it general . . . without necessarily thinking about whether or not they can be fair to an individual, they just think 'I couldn't be fair to any [child abuser].' And I think in that situation, then I think we need to go over that with them to make sure they are answering the right question. In reference to the law, [for a juror to be discharged, he needs to state] that he has established in his mind, such a conclusion as to the guilt or innocence of the defendant, . . . and that . . . this conclusion, so established, would influence his verdict. . . . Without that being set up exactly and specifically in that order and those specific questions asked, I don't think there is any automatic exclusion based on one question you asked them out there. So to that extent, I am going to question them, some of them, up here at the bench.

6

When the trial judge denied appellant's request for additional peremptory strikes, he stated that, according to his understanding of the applicable law, the challenges for cause were properly denied because "we carefully interviewed each and every person that indicated any kind of problem here at the bench and got what the Court believed were unequivocal responses from them at the bench as to whether or not they could or could not be fair and each side was able to question them, even after the Court questioned them."

Although Foley's initial response to a general question indicated a general bias—that she "tend[ed] to want to overprotect" children—once she was questioned further and had the law more fully explained to her, she affirmed at least five times that she could be a fair and impartial juror. Because Foley initially equivocated, the trial court determined that it was proper to engage her in an individual voir dire. Ultimately, the court determined that Foley's answers were sufficient to deny the challenge for cause against her. Given that we are to give great deference to a trial court's decision to grant or deny a challenge for cause, and that the court's decisions here directly followed the law set forth by the court of criminal appeals, it was not an abuse of discretion to deny appellant's challenge for cause to potential juror Foley. Appellant's first issue is overruled.

**Exclusion of Complainant's Videotaped Statement**

Prior to making the instant claims against her grandfather, R.L. accused two uncles of sexually abusing her. When those accusations were made, investigators conducted two videotaped interviews with R.L. in which she repeated the claims against her uncles. One afternoon, R.L.'s mother began a discussion with her about the accusations she had made. During that conversation, R.L. revealed for the first time that her uncles had not abused her, but that her

grandfather had. R.L. claimed that she made the false accusations because of pressure from her mother's boyfriend, and because she did not want to hurt her mother's feelings by accusing her maternal grandfather of sexually abusing her.

Prior to opening statements, appellant sought admission of the videotapes as impeachment evidence against R.L. The judge responded that "[i]f she admits to making the statement, I don't see under what theory under the Rules that the extrinsic evidence of the statement itself is admissible. . . . I think you can cross examine her to the full extent because [Rule 613] says, if she unequivocally admits having made such a statement, . . . extrinsic evidence [of] the same shall not be admitted. It doesn't say *may* not. . . . The Rule says *shall* not be admitted." (Emphasis added.)

At trial, the jury was repeatedly informed of R.L.'s previous, false accusations against her uncles. The prosecutor explained in the State's opening statement that "[y]ou will hear that [R.L.] made an allegation against her uncles. . . . And you will hear that this was a lie, this was a false allegation. . . ." During R.L.'s direct examination, the State asked her a series of specific questions about the false accusations. Throughout the series, the prosecutor referred to the accusations as "the lies." When R.L. was asked, "Was everything you said about [your two uncles] a lie?" she responded "Yes." And she repeatedly admitted throughout her direct examination that her previous accusations were false. On cross-examination, R.L. was asked another series of specific questions regarding these accusations, and she continuously answered that the accusations were lies.

Following R.L.'s direct and cross-examinations, appellant again sought to admit the videotapes into evidence. The trial court denied this request on the grounds that, because R.L.

unequivocally admitted to the falsity of the prior inconsistent statements,[2] it was not proper to admit extrinsic evidence of them and, because the tapes were unedited, they would cause undue delay and confusion of the issues if admitted. *See* Tex. R. Evid. 403, 613. Appellant asserts that the exclusion of this evidence violated his constitutional right to confront the witness testifying against him.

Because trial courts have "the best vantage point" from which to view the evidence, and are therefore "in the best position to make the call on these substantive admissibility questions," we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Under this standard, we are to affirm the trial court's decision so long as it is "within the zone of reasonable disagreement." *Id*. In other words, we "must uphold the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. Finally, an appellate court must review the trial court's ruling in light of what was before the trial court at the time the ruling was made." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002) (citations omitted).

According to the Constitutions of the United States and Texas, as well as the Texas Code of Criminal Procedure, "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 1.05 (West 1977). If a person accused of child molestation is not permitted to fully cross-examine the complainant on the relevant matters and facts of the case, then

---

[2] The trial judge clarified that he believed the statements to be only "legally inconsistent" and "not factually inconsistent on their face," because "both statements could be true," given that the videotaped statements related to prior accusations against R.L.'s uncles, rather than the instant accusations against appellant.

9

it can amount to a violation of the accused's constitutional and statutory rights. *See Lively v. State*, 968 S.W.2d 363, 366 (Tex. Crim. App. 1998).

Appellant relies on *Thomas v. State* to support his claim that the trial court violated his constitutional rights by excluding the videotapes of R.L.'s prior inconsistent statements. 669 S.W.2d 420 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd). However, the facts of *Thomas* are clearly distinguishable from those of the instant case because the complainant there had not otherwise admitted to the impeaching evidence in front of the jury. *Id*. at 423. The *Thomas* court held that the defendant's rights were violated because the jury had not been given an opportunity to hear the impeaching evidence and then make its own decision about the complainant's credibility. *Id*. Here, the jury was fully informed of the fact that R.L. had falsely accused her uncles of sexual abuse on a prior occasion. The jurors were free to weigh all of the evidence to determine whether or not they believed R.L.'s accusations against her grandfather. Thus, the concerns of the *Thomas* court were satisfied here, and it did not violate appellant's constitutional or statutory rights for the trial court to refuse to admit the videotaped statements, especially in light of the fact that appellant was permitted to fully cross-examine R.L. about those false accusations.

Further, the trial court's decision to exclude the tapes was proper under Texas Rule of Evidence 613, which states in no uncertain terms that "[i]n examining a witness concerning a prior inconsistent statement made by the witness, . . . [i]f the witness unequivocally admits having made such statement, extrinsic evidence of same shall not be admitted." Under this rule, therefore, "whether one can use extrinsic evidence is contingent upon the witness's response when confronted with the alleged inconsistent statement." *Clark v. State*, 881 S.W.2d 682, 696 (Tex. Crim. App. 1994). Appellant does not challenge that R.L.'s videotaped statements were "prior inconsistent

10

statements" falling under the purview of Rule 613, nor that R.L. unequivocally admitted that the prior accusations were false. In ruling that the videotapes should not be admitted, the trial court specifically stated that its decision was based on the language of Rule 613.

The court's ruling was also proper under Rules 403 and 611. Rule 403 states that, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of the evidence." Tex. R. Evid. 403. Rule 611 provides trial courts with the authority to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to . . . (2) avoid needless consumption of time." Tex. R. Evid. 611. Pursuant to these rules of evidence, the court of criminal appeals recently held that it was not an abuse of discretion for a trial court to refuse to admit two videotapes portraying a child sexual-abuse complainant making inconsistent statements about her accusations. *Willover*, 70 S.W.3d at 847. The court's reasoning was based on the fact that the tapes were unedited and it was not the trial court's responsibility to "sort through" and determine what might be relevant where the appellant failed to "specify and extract the statements he wanted to use for impeachment purposes." *Id*.

Here, as additional reasons for excluding the unedited videotapes, the judge said that admitting the tapes in their entirety "would be an incredibly bad use of the court's time, would be unduly time consuming for the value it would add to what has already been stated by the witness, would confuse the jury, would . . . divert the jury's attention from the real issues in the case and divert them over to this collateral issue, in addition to being time consuming and would be unfair." Because the trial court had sole discretion regarding the admissibility of evidence, and because its

11

decisions complied with the rules of evidence and applicable holdings from the court of criminal appeals, it was not an abuse of discretion to exclude R.L.'s videotaped statements. Appellant's second issue is overruled.

**Admission of Expert Testimony**

The State called Dr. William Carter, a psychologist who frequently works with sexually abused children, as an expert witness. During his direct examination, the prosecutor asked Dr. Carter about a series of hypothetical situations that tracked the facts of the case and, after each hypothetical, asked him whether, given such facts, it was likely that the child had suffered sexual abuse. The facts supplied to Dr. Carter in the hypotheticals followed the specific details of the abuse alleged in R.L.'s previous testimony. Although appellant made several objections to this line of questioning, four of which the trial court overruled, the State urges that appellant waived error on this issue because his complaint on appeal is not stated in precisely the same terms as his objections at trial.

In order to preserve error to the admission of expert testimony, an appellant must have made a timely objection "with sufficient specificity to make the trial court aware of the complaint," and obtained an adverse ruling, or a refusal to rule, from the trial court on that objection. *See* Tex. R. App. P. 33.1(a); *Gueder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). The objection will be considered sufficiently specific as long as the appellant's legal basis is "clear from the context" so "that both the judge and the prosecutor understood" the nature of his objection. *Heidelberg v. State*, 144 S.W.3d 535, 538 (Tex. Crim. App. 2004); *see also Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977) ("where correct ground of exclusion was obvious to judge and opposing

12

counsel, no waiver results from a general or imprecise objection"). Finally, the legal basis asserted for the objection must be the same on appeal as it was at trial. *Heidelberg*, 144 S.W.3d at 537.

At trial, appellant objected that the expert's testimony was "inappropriate and improper" because the State's hypothetical questions used facts "ti[ed] in . . . specifically to the case in chief" and because the questions did not even have a "facade of not being the exact facts of this case." Further, he objected to the hypotheticals because "what the prosecutor is really trying to do is get this witness to make a statement about the guilt or innocence of my client and basically is invading the province of the jury," and because "that is outside the relevance of an expert testifying." On appeal, appellant asserts that the expert's testimony was improper because the facts of the hypothetical "matched the complainant's statements in many exact details" and because it "advis[ed] the jurors who is more credible."

Not only were appellant's trial objections specific enough to put the court and the prosecutor on notice of the nature of his complaint, but also the legal basis asserted in those objections is consistent with that of his complaints on appeal. Appellant therefore preserved error regarding the admission of Dr. Carter's testimony. The State urges alternatively that, if error was preserved, the conviction should be affirmed because it was not improper for the trial court to allow the expert to testify through the use of hypothetical questions tracking the facts of the case.

In order to admit expert testimony, the trial court must find that the evidence satisfies both Rule 702, that the testimony will be helpful to the trier of fact, and Rule 403, that the testimony's probative value is not outweighed by any prejudicial effect. Tex. R. Evid. 403, 702; *Jordan v. State*, 928 S.W.2d 550, 554 (Tex. Crim. App. 1996); *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). The decision to admit or exclude the testimony will only be reversed if the

13

court abused its discretion regarding either of these two inquiries. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Morales v. State*, 32 S.W.3d 862, 865 (Tex. Crim. App. 2000). It will be considered an abuse of discretion if the "ruling is arbitrary, unreasonable or without reference to any guiding rules or legal principles." *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). When there is evidence in the record to support the trial court's decision to admit evidence, then it is not an abuse of discretion and we must defer to that decision. *Osbourn,* 92 S.W.3d at 538. "Even when the trial judge gives the wrong reason for his decision, if the decision is correct on any theory of law applicable to the case it will be sustained. This is especially true with regard to the admission of evidence." *Id.* (citations omitted).

Rule 702 states that if the expert's "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue," then the expert "may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. Expert testimony is typically not permitted where the expert is in no better position than the jurors to reach that conclusion. *K-Mart Corp*., 24 S.W.3d at 360. "When the jury is equally competent to form an opinion about the ultimate fact issues or the expert's testimony is within the common knowledge of the jury, the trial court should exclude the expert's testimony." *Id*. However, the expert's testimony is "not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Tex. R. Evid. 704. Consequently, it "is no longer a valid objection" to assert that an expert's testimony "invades the province of the jury." *Oritz v. State*, 834 S.W.2d 343, 348 (Tex. Crim. App. 1992).

An expert's testimony can be helpful to the trier of fact even when the expert does not have personal knowledge of the relevant facts. *Matson v. State*, 819 S.W.2d 839, 853 (Tex.

Crim. App. 1991). An expert may give an opinion on facts made known to him at trial through the use of hypothetical questions, so long as the facts utilized by the hypothetical are admitted into evidence, or are facts assumed by counsel "in accordance with the theory of his case." *Id*. at 852; *see also Jordan*, 928 S.W.2d at 556 n.8; *Gonzales v. State*, 4 S.W.3d 406, 417 (Tex. App.—Waco 1999, no pet.). "The use of hypothetical questions in the examination of expert witnesses is a well-established practice." *Matson*, 819 S.W.2d at 853.

Several courts have applied these rules specifically to the admission of expert testimony in child-abuse cases and held that, in response to hypothetical questions, an expert may testify about whether the characteristics manifested by the victim at issue are consistent with those characteristics manifested by other, similarly situated victims. *See, e.g.*, *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993); *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993); *Gonzales*, 4 S.W.3d at 417; *Kirkpatrick v. State*, 747 S.W.2d 833, 835 (Tex. App.—Dallas 1987, pet. ref'd). Such testimony is permissible even when the complainant's credibility has not been challenged. *Cohn*, 849 S.W.2d at 818. As our sister court stated in *Kirkpatrick*,

> The rationale is that while the common experience of jurors enables them to assess the credibility of alleged assault victims generally, the unique pressures surrounding a child victim, and their concomitant effects on the child's behavior, are such that an expert's testimony is deemed useful in assisting the jurors' assessment of the child's credibility. The expert's testimony about the general behavioral traits of child victims—e.g., delay in reporting the incident, recantation, truancy, embarrassment, running away from home, and inconsistent versions of abuse—explains to the jurors that such behavior, which might otherwise be attributed to inaccuracy or falsification, is typical of the class of victims and does not necessarily indicate a lack of credibility. Thus, such testimony, which allows the jury to assess the credibility of a particular complainant more fairly by explaining the emotional antecedents underlying the typical victim's behavior, meets the requirements of Rule 702.

15

747 S.W.2d at 856-36. However, Rule 702 does not permit an expert to give a direct opinion about the truthfulness of a particular child complainant's allegations, because "experts on child abuse are not human lie detectors" and, ultimately, the determination of the complainant's credibility is left to the jurors. *Yount*, 872 S.W.2d at 710. Once the witness has shared his relevant expertise with the jurors, then they are fully capable of drawing a final conclusion as to the truthfulness of the complainant. *Id*.

Here, appellant objected to the State asking Dr. Carter whether he would consider it typical for a victim of child abuse to include certain, sensory details in her description of the occurrence. Specifically, Dr. Carter was asked whether a child victim would likely describe that she stared at a clock on the wall while the abuse was happening, that the perpetrator moved in a certain way during the abuse, and that she found "gooey stuff" when she used the restroom following the abuse.[3] Dr. Carter's opinion on these issues satisfied the Rule 702 "helpfulness" standard because he imparted specialized knowledge that is beyond an average juror's common understanding. Further, his testimony satisfied the Rule 403 balancing test because he responded only about general characteristics of child-abuse victims, based on facts that were admitted into evidence through the complainant's testimony, and because Dr. Carter did not state a direct opinion about this particular complainant's credibility. It was therefore not an abuse of discretion for the trial court to overrule appellant's objections and permit Dr. Carter to testify through the use of hypothetical questions. Appellant's third issue is overruled.

---

[3] The State asked Dr. Carter about several other sensory details, but these are the only three questions to which the trial court overruled appellant's objections, thereby preserving error.

**Denial of Motion for Mistrial**

At one point during Dr. Carter's testimony, the State asked him whether, "in a situation where the prosecutor's questions are very closely tied to the facts, and it seems to be I am getting close to the facts of a particular case, I guess it is possible the defense attorney might object to that?" Dr. Carter responded, "Yes." Appellant objected to this testimony, and the trial court sustained his objection. Appellant then sought an instruction for the jury to disregard the question and answer, and the court delivered the instruction to the jurors. Finally, appellant moved for a mistrial, but the court denied it. Appellant claims that the court committed reversible error by denying his motion for mistrial.[4]

"Where the prejudice is curable, an instruction eliminates the need for a mistrial, thereby conserving the resources associated with beginning the trial process anew." *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). Thus, an objection coupled with an instruction to disregard should be the first remedy, and is usually sufficient, whereas the "declaration of a mistrial ought to be an exceedingly uncommon remedy for residual prejudice remaining after objections are sustained and curative instructions given." *West v. State*, 121 S.W.3d 95, 106 (Tex. App.—Fort Worth 2003, pet. ref'd). We review a trial court's decision to grant or deny a mistrial for an abuse of discretion. *Id*. at 107. In so doing, we look to see whether the prejudicial effect of the objectionable testimony was cured by the instruction to disregard. *Id*. The denial of a motion for

---

[4] In his brief, appellant makes this challenge in connection with his third point of error. Because this challenge focuses on a denied motion for mistrial, rather than the propriety of an expert testifying through hypotheticals, for the purposes of this opinion, we consider separately appellant's challenge to the denial of his motion for mistrial.

mistrial only constitutes an abuse of discretion if the testimony was "so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced." *Id*.

Dr. Carter was not qualified to render an opinion as to whether the defense counsel was likely to object to the State's question. But any prejudice resulting from this testimony was cured by the court's instruction to disregard. This single question, on a matter outside of the relevant facts, did not justify the "exceedingly uncommon remedy" of granting a mistrial. The trial court did not abuse its discretion in denying appellant's motion.

## CONCLUSION

Appellant asserted three points of error challenging his conviction for sexually abusing his granddaughter. Because we find that the trial court did not abuse its discretion in denying appellant's challenge for cause to a potential juror, in excluding videotaped statements of the complainant, in allowing the State's expert to testify through hypothetical questions, or in denying appellant's motion for mistrial, we affirm the conviction.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:  January 21, 2005

Do Not Publish

18