98-00186 & 98-00187 Rivera v State of Texas.wpd



Nos. 04-98-00186-CR and 04-98-00187-CR


Cassandra RIVERA,


Appellant


v.


The STATE of Texas,


Appellee


From the 175th Judicial District Court, Bexar County, Texas


Trial Court Nos. 95-CR-1255-C and 95-CR-1256-C


Honorable Pat Priest, Judge Presiding


Opinion by: Karen Angelini, Justice

Sitting: Catherine Stone, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice

Delivered and Filed: December 22, 1999

AFFIRMED

 Cassandra Rivera appeals her convictions for two counts of aggravated sexual assault and
two counts of indecency with a child. Rivera was one of four women charged with assaulting the
child complainants, V.L. and S.L. Rivera was tried by a jury, along with Anna Vasquez and Kristie
Mayhew.(1) She was sentenced to fifteen years incarceration for each of the aggravated sexual assault
counts and ten years incarceration for each of the indecency with a child counts. On appeal, Rivera
contends that the evidence is neither legally nor factually sufficient to support the jury's verdicts.

 We review challenges to the sufficiency of the evidence under well established standards.
In considering the legal sufficiency of the evidence, we must determine whether, viewing all of the
evidence in the light most favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307,
319 (1979); Williams v. State, 937 S.W.2d 479, 482-83 (Tex. Crim. App. 1996); Geesa v. State, 820
S.W.2d 154, 156-57 (Tex. Crim. App. 1991). Under this standard, the jury is the exclusive judge
of the credibility of the evidence and witnesses. See McFarland v. State, 928 S.W.2d 482, 496 (Tex.
Crim. App. 1996).

 In reviewing the factual sufficiency of the evidence, we consider all of the evidence without
regard to whether the evidence is favorable to either the State or the appellant. See Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Evidence is to be weighed equally, but with
appropriate deference to the fact finder's determination. See id. at 133; De Los Santos v. State, 918
S.W.2d 565, 569 (Tex. App.--San Antonio 1996, no pet.). We may find evidence factually
insufficient only where it is necessary to prevent manifest injustice. Cain v. State, 958 S.W.2d 404,
407 (Tex. Crim. App. 1997). As in a legal sufficiency review, conflicts in witness testimony are left
to the discretion of the jury. See De Los Santos, 918 S.W.2d at 569.

 In this case, the evidence reflects that, in the summer of 1994, nine year-old V.L and her
seven year-old sister, S.L., visited their aunt, Liz Ramirez, for several days at the apartment Liz
shared with Kristie Mayhew. During the course of their stay with Liz, the girls also became
acquainted with Anna Vasquez and Cassandra Rivera, who visited the apartment frequently. 

 V.L. testified that, on the fourth day of her visit, she and S.L. were playing outside with the
neighbor children when Liz called her inside. According to V.L., Liz was acting strange, had red
eyes, and had trouble walking. V.L. went into the house, and Liz told her to go into the bedroom.
When V.L. resisted, Liz pushed her into the bedroom where she saw Kristie, Anna, and Cassandra
lying on the floor with their tops off, drinking wine coolers and beer. V.L. noticed a clear liquid, a
bag containing white powder, and a "tube-looking" thing on the dresser.

 The women began "yelling" at V.L. and told her to remove her pants. When V.L. refused,
two of the women held her down while Anna took off her pants and someone else removed her
underwear. All four women then began touching V.L. all over her body. Anna put her fingers inside
of V.L.'s vagina and kissed her on the lips. Anna then began inserting the clear liquid, the white
powder, and the tube into V.L.'s vagina. Liz and Kristie continued to hold V.L. down while
Cassandra touched her. Following this incident, V.L. was told to take a shower, which she did.
When she finished showering, she heard S.L. screaming in the bedroom. She tried to get in, but the
door was locked. S.L. eventually came out of the bedroom without her pants on and went to take
a shower.

 V.L. testified that her father called a short time later. Before she was given the telephone,
however, Anna showed V.L. a gun and told her that if she told anyone about the incident, Anna
would kill V.L. and her family. V.L. then had a "normal" conversation with her father. The
following day, V.L. testified that a similar incident took place, in which she was fondled by Anna
and Liz while S.L. was in another room with Cassandra. After this second incident, Anna reminded
the girls about the gun. 

 S.L. also testified. She stated that she was playing outside when she was told to come into
the apartment. When she did, she heard her sister screaming. S.L. testified that V.L. came out of
the bathroom and went outside. Then, Liz and Kristie took off S.L.'s shorts and underwear, while
Anna and Cassandra held her down. S.L. was fondled, and then, Cassandra "put something" into
her vagina. S.L. testified that all four women had their clothes on, but that Cassandra raised her shirt
up during the incident. Cassandra then showed S.L. a gun, and Liz and Anna told her they would
shoot "someone" if she told anyone about the incident. S.L. had no recollection of her father calling
after the incident.

 S.L. testified that, on the following day, "the same thing happened again." This time, Kristie
put something into her vagina while the other three women held her down. She later heard V.L.
screaming and, when she went to investigate, she saw Liz putting something into V.L.'s vagina.

 The girls' grandmother, Sarafina Limon, testified that the girls spent a week with their Aunt
Liz during the summer of 1994. When they came home, they were not acting "normal," they were
subdued, scared, and refused to make eye-contact. Several months later, Ms. Limon noticed that the
girls were behaving strangely with their dolls. When she asked the girls why they were doing this,
V.L. eventually told her what had happened at Liz's apartment. S.L. confirmed V.L.'s story.

 Officer Majetka testified that he took statements from the girls after the incident was
reported. He noted that he checked the stories for consistency.

 Dr. Nancy Kellogg testified that she conducted medical examinations of V.L. and S.L. in
September of 1994. Dr. Kellogg stated that S.L. told her she was held down by four women at her
Aunt Liz's house, that her clothes were removed, that something was put in her vagina, and that she
was threatened with a gun. According to Dr. Kellogg, S.L. related these events in an age-appropriate
manner. Dr. Kellogg noted that S.L. was quite scared during the examination and that she was more
anxious than a normal child during a genital exam. The exam revealed redness in S.L.'s genital area
and a thickened hymen. The results of the exam were consistent with the history relayed by S.L.

 Dr. Kellogg testified that V.L. acted very scared, age-appropriate, and quiet during their
interview. V.L. named her four abusers and told Dr. Kellogg that she was called inside, sent to the
bedroom where she encountered topless women, her pants were taken off, and a clear, cold liquid
along with something else was inserted into her vagina while she was held down. V.L. told Dr.
Kellogg that she had been threatened with a gun. V.L.'s genital exam was abnormal. Specifically,
she had a scar on her hymen, which indicated that penetration had occurred. Dr. Kellogg noted that
the exam was consistent with the history and time frame relayed by V.L.

 Dr. Kellogg further testified that she evaluated the pictures and medical records of both V.L.
and S.L. when they were examined in 1992. She stated that there were definite changes in both the
girls' genitalia from 1992 to 1994. Finally, Dr. Kellogg testified that it was not unusual for a child
to wait up to 2 or 3 years before telling someone about an incident of sexual abuse. 

 Finally, Cassandra, Anna, and Kristie each testified on her own behalf. Each of the women
relayed the events of the week that V.L. and S.L. were staying with Liz, and each of the women
denied the girls' allegations of sexual abuse. 

 Cassandra contends that the evidence is insufficient to support her convictions because the
testimony of both V.L. and S.L. was "suspect, irrational, and unreasonable." Specifically, the girls
are "not to be believed" because their testimony during this trial was contradicted by their testimony
in Liz's trial. The portions of the girls' testimony that Cassandra alleges are contradicted by their
testimony in the previous trial involve, primarily, who held the gun that was used to threaten the
girls. At Liz's trial, the girls claimed that Liz held the gun, and at this trial, the girls claimed that
either Anna or Cassandra held the gun. Other inconsistencies involve whether the door was locked
from the inside or the outside, whether the first incident occurred at 2:00 or 4:00 p.m., whether there
were other children in the house, and whether the girls went out to play after the first incident. 

 Cassandra also alleges that the girls' grandmother's testimony is unreliable because, while
she did not mention a gun when she gave her statement to the police, she testified during trial that
the girls told her a gun was used to threaten them. Further, during Liz's trial, Ms. Limon stated that
a knife was used to threaten the girls. At this trial, however, she insisted that she said "weapon," not
"knife" at Liz's trial. She claimed that she was upset and confused when she gave her statement to
the police and when she testified at Liz's trial.

 

 First, we acknowledge that there are several inconsistencies in the testimony of both the girls
and their grandmother. However, it is important to note that none of these inconsistencies goes to
an essential element of the offenses charged. See Tex. Penal Code Ann. §22.021(a)(1)(B)(i)
(Vernon 1994) (setting out elements of aggravated sexual assault); Tex. Penal Code Ann.
§21.11(a)(1) (Vernon 1994) (setting out elements of indecency with a child). 

 The girls have consistently maintained in their statements to the police, in their testimony
during Liz's trial, and during this trial that they were held down, that they were stripped from the
waist down, that they were fondled, and that various objects and substances were inserted into their
vaginas. There is no inconsistency on these points and the medical testimony supports the girls'
allegations. Furthermore, the girls never wavered on the fact that a gun was used to threaten them.
Under the facts of this case, the person actually holding the gun is irrelevant. See Lively v. State, 940
S.W.2d 380, 383 (Tex. App.--San Antonio 1997) (discussing law of parties), affirmed, 968 S.W.2d
363 (Tex. Crim. App. 1998).(2) Accordingly, the inconsistencies at issue here are not conclusively
fatal to the State's case, but go only to the witnesses' credibility.

 The jury, as the trier of fact, assesses the credibility of witnesses and the weight to be given
their testimony. See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Furthermore,
the Texas Code of Criminal Procedure provides that reconciliation of conflicts and contradictions
in the evidence is within the sole province of the jury. See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1994); Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). The jury may believe
some witnesses and refuse to believe others, and it may accept portions of the testimony of a witness
and reject other portions. See Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981); 
Bowden v. State, 628 S.W.2d 782 (Tex. Crim. App. 1982). Accordingly, conflicts in evidence will
not call for reversal if there is enough credible testimony to support the conviction. 

 Having reviewed the evidence in its entirety, we find that the evidence in this case is both
legally and factually sufficient to support jury's findings that Cassandra committed both aggravated
sexual assault and indecency with a child as alleged in the indictment. The judgment of the trial
court is affirmed.

 KAREN ANGELINI

 JUSTICE

DO NOT PUBLISH


1. The fourth woman charged with assaulting the complainants, Liz Ramirez, was tried separately.
2. In fact, whether there was a gun involved at all is irrelevant to the outcome of this case as the sections of
the penal code that criminalize aggravated sexual assault of a child and indecency with a child do not require proof
of a deadly weapon. See Tex. Penal Code Ann. §22.021(a)(1)(B)(i) (Vernon 1994); Tex. Penal Code Ann.
§21.11(a)(1) (Vernon 1994).