

# MEMORANDUM OPINION

No. 04-06-00366-CR

Ricardo Ramos **AGUILAR**,
Appellant

v.

**THE STATE OF TEXAS**,
Appellee

From the 381st Judicial District Court, Starr County, Texas
Trial Court No. 05-CR-203
Honorable John A. Pope, III, Judge Presiding

Opinion by:  Sandee Bryan Marion, Justice

Sitting:  Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:  April 29, 2009

AFFIRMED

Defendant, Ricardo Ramos Aguilar, was convicted of capital murder and sentenced to life

imprisonment.  On appeal, defendant asserts (1) the evidence is legally and factually insufficient to

support the jury's verdict, and (2) he received ineffective assistance of trial counsel.  We affirm.

**BACKGROUND**

On February 17, 1996, defendant participated in the abduction of Jessie Ray Warren, Jr. from

Warren's home in Starr County, Texas.  A few weeks after Warren's kidnapping his remains were

found in a shallow grave in Mexico. Warren was kidnaped and subsequently murdered because defendant and his associates believed he was responsible for the theft of 1300 pounds of defendant's marijuana.

Defendant was storing 1300 pounds of marijuana at Ubaldo Diaz's ranch. When it was discovered the marijuana was missing, Diaz learned that Warren and Jimmy Newman were responsible. Defendant, Diaz, and several of their associates met at Diaz's ranch to discuss a course of action regarding the missing marijuana. At the end of the meeting, the group decided they were "going to go get the people that got the marijuana." They made a plan to wait until dark and then go pick up Newman and Warren and get the marijuana back. After defendant, Diaz, and their associates left the ranch, they stopped at a country store so that Diaz could make a telephone call. At the store, the group encountered Newman's brother-in-law Eduardo Acevedo. The group abducted Acevedo and forced him to take them to Newman's house. The group invaded Newman's house, but no one was home. At defendant's urging, the group decided to move on to Warren's house. Defendant told Diaz "somebody better be at [Warren's] house . . . if not [you are] going to take the bullet."

When the group arrived at Warren's house, Warren began shooting at them from the front of the house. Diaz drove his vehicle through the garage door and entered the house from behind. Warren was shot in the leg, disarmed, and forcibly removed from the house. As Warren was dragged from his house, he clung to a pole on his front porch. Defendant, wanting Warren to release the pole, shot him in the back. Warren released the pole and defendant ordered that Warren be tied up and put in his associate's vehicle. When his associate refused, defendant told him: "If you don't put him

on your truck, I'm going to kill you also." Warren was put in the vehicle and driven away from his house. Defendant was not in the vehicle that drove Warren away from his house.

On March 1, 1996, Warren's remains were found in a shallow grave in Mexico. Warren's body was partially burned and decomposition showed that he had been dead for several weeks. The autopsy revealed that the cause of death was a close-range shotgun wound to the left side of the back. A week after Warren's body was found, the investigation lead police to a second crime scene in Starr County, Texas. The second crime scene was a burned area of land that was identified as the location where Warren was murdered and his body was burned.

In January 2005, defendant was indicted for the capital murder of Warren. A jury found defendant guilty and sentenced him to life imprisonment. This appeal ensued.

## LEGAL AND FACTUAL SUFFICIENCY

Defendant asserts the evidence is both legally and factually insufficient to support his conviction for capital murder. More specifically, he contends the evidence was insufficient to show he was as a party to Warren's murder because Warren was alive when he was driven away from his house, and defendant was not present when Warren was murdered. We disagree.

We review the sufficiency of the evidence under the appropriate standards of review. *See Jackson v. Virginia*, 99 S. Ct. 2781, 2789 (1979) (legal sufficiency); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (same); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (factual sufficiency); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (same). The standard of review is the same in both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999).

A person commits the offense of capital murder if he intentionally or knowingly causes the death of an individual while committing certain offenses, including kidnapping. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon 2003). Defendant concedes his involvement in Warren's kidnapping; however, on appeal, he contends Warren was alive when he was driven away and there is no evidence of his presence when Warren was killed. While there is no evidence of defendant's presence at the Starr County crime scene were it was determined Warren was murdered, under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed . . . by the conduct of another for which he is criminally responsible." *Id*. § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). The State may use direct or circumstantial evidence to prove the defendant's responsibility as a party to the offense. *Rivera v. State*, 12 S.W.3d 572, 575 (Tex. App.—San Antonio 2000, no pet.). In considering whether the defendant participated as a party, the court may look to events that occurred before, during, or after the offense was committed. *Lively v. State*, 940 S.W.2d 380, 383 (Tex. App.—San Antonio 1997), *aff'd*, 968 S.W.2d 363 (Tex. Crim. App. 1998).

To convict defendant of capital murder as a party under Penal Code section 7.02(a)(2), the State had to prove that the defendant harbored the specific intent to promote or assist the commission of an intentional murder. *Lawton v. State*, 913 S.W.2d 542, 555 (Tex. Crim. App. 1995), *cert. denied*, 519 U.S. 826 (1996), *overruled on other grounds*, *Mosley v. State*, 983 S.W.2d 249, 263 (Tex. Crim. App. 1998). Testimony showed that defendant participated in the decision to seek out

Warren for stealing his drugs, and that defendant threatened to kill his associates if they did not comply with his orders regarding Warren. Testimony also revealed that many of the assailants had guns, and defendant admits he shot Warren in the back during the kidnapping. Intent to kill may be inferred from use of a deadly weapon. *Flanagan v. State*, 675 S.W.2d 734, 744 (Tex. Crim. App. 1984). A firearm is a deadly weapon *per se*. *Id.*; TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon 2003). Even if defendant was not present when Warren was murdered, he is criminally responsible for the murder as his actions showed an "intent to promote or assist the commission of the offense" by aiding in its commission. *Id.* § 7.02(a)(2). After a review of the record, we hold there is legally and factually sufficient evidence to support the jury's verdict.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second issue on appeal, defendant contends trial counsel provided ineffective assistance because he (1) failed to object to Agent Gregorski's inadmissible testimony and (2) stipulated to the fact that the remains found at the "homicide scene" in Starr County were Warren's. Defendant argues trial counsel's assistance was deficient because the territorial jurisdiction of the State could not have been established but for counsel's failure to object to Agent Gregorski's testimony and his stipulation regarding the identity of the remains. We review defendant's complaint under the well-established standard set forth in *Strickland v. Washington*, 466 U.S. 668, 690 (1984).

At trial, F.B.I. Agent Charles Christopher Gregorski testified as to the location of the crime scene in Mexico where Warren's remains were found in a shallow grave. He also testified that in the course of the investigation he discovered a second crime scene in Starr County, Texas where it was believed Warren was murdered and burned prior to being placed in the shallow grave across the

border in Mexico. He testified that "one of the subjects in the investigation took us to that site and identified it as the location where the homicide occurred." Agent Gregorski authenticated photographs of the charred area and they were admitted into evidence. He also identified the shotgun shells that were found at the homicide scene in Starr County. When Agent Gregorski began to testify about the forensic evidence found at the second crime scene in Starr County, defense counsel interrupted and stipulated to the fact that the remains found at both crime scenes, the shallow grave in Mexico and the charred area in Starr County, belonged to Warren. Defendant argues on appeal that if trial counsel had objected to Agent Gregorski's testimony and withheld his stipulation regarding the identity of the remains found in Starr County, the State would not have been able to establish territorial jurisdiction over this case.

Texas has territorial jurisdiction over "an offense that a person commits by his own conduct or the conduct of another for which he is criminally responsible if: (1) either the conduct or a result that is an element of the offense occurs inside this state . . . ." TEX. PENAL CODE ANN. § 1.04(a)(1) (Vernon 2003). Kidnapping is conduct constituting an element of the offense of capital murder because the State is required to prove the murder occurred in the course of a kidnapping to elevate the offense from murder to capital murder. *See Rodriguez v. State*, 146 S.W.3d 674, 677 (Tex. Crim. App. 2004) (declaring kidnapping conduct that is an element of the offense of capital murder). Therefore, because the kidnapping occurred in Starr County, Texas, Texas had territorial jurisdiction over this offense.

Accordingly, trial counsel's failure to object to Agent Gregorski's testimony and his stipulation as to the identity of the remains in Starr County did not effect the State's burden to

establish territorial jurisdiction.  Because the actions defendant complains of would not have changed the result of the proceeding we do not believe trial counsel's actions constitute deficient representation.

## CONCLUSION

We overrule defendant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

DO NOT PUBLISH